## T. R. RUTLEDGE v. THE STATE.

### No. 7217. Decided April 18, 1923.

**1.—Assault to Rob Examining Papers of Opposite Side—Rule Stated.**

The propriety of allowing adverse party to inspect, for the purpose of cross-examination, any memorandum used by a witness to refresh his memory upon the matters as to which he is testifying is universally conceded by the courts. Following Green v. State, 53 Texas Crim. Rep., 492. Distinguishing Jones v. State, 85 Texas Crim. Rep., 547.

**2.—Same—Examining Papers—Practice in Trial Court.**

This court believes the learned trial judge in the instant case was in error in refusing to require that the appellant be furnished the memorandum which was used by the counsel for the State and the witness, and upon which in part her testimony on cross-examination was based. Following Kirkland v. State, 218 S. W. Rep., 367.

**3.—Same—Indictment—Duplicity—Death Penalty.**

An indictment charging robbery by assault and by the use of a deadly weapon is not duplicitous. It is unnecessary, however, that the court should instruct on the death penalty.

Appeal from the District Court of Lubbock. Tried below before the Hon. W. R. Spencer.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Percy Spencer,* for appellant.—Cited Robinson v. State, 149 S. W. Rep., 186.—On question of examining papers of opposite side, Green v. State, 110 S. W. Rep., 920.

*W. A. Keeling,* Attorney General and *C. L. Stone,* Assistant Attorney General for the State.—Cited cases in the opinion.

MORROW, PRESIDING JUDGE.—The conviction is for assault to rob; punishment fixed at confinement in the penitentiary for a period of five years.

The evidence is circumstantial. Hughes, the injured party, while the car of the assailants was traced to a point near which the dead some persons who were apparently working on an automobile on the side of the road, was attacked by them. They wore masks, exhibited firearms and commanded Hughes to stop. He fled in his car and fired upon one of them, who fell in his tracks. Later in the night, riding in his automobile in the night-time and in the act of passing body of a man named Shirley was found recently buried. It was

the theory of the State that Shirley was shot by Hughes and that appellant was one of Shirley's companions in the attempt to rob Hughes. On the following day, the automobile of the appellant was found on a street in the town of Post. There were indications that it had been washed and there were remnants of blood upon it. It was appellant's theory that his car had been used without his knowledge or consent and was probably used in committing the offense but that he was not one of the offenders. He testified to facts supporting this theory and so did the wife. Both of them declared that he was not at home on the night upon which the assault took place. His car was a ford automobile and there was evidence that he was in the habit of leaving the key in the car and that it was frequently used by other persons. Combatting this theory State introduced some members of a family named Nickens, who were door neighbors of the appellant. Charles Nickens testified that on the morning after the offense he saw the appellant at his home washing his car. Mrs. Mary Nickens gave like testimony. Appellant admitted that he washed his automobile and said that after spending the night away, he returned to home, and on hearing of the attempt to rob Hughes and observing that some one had used his car, and fearing that suspicion might fall upon him, he endeavored to wash the evidence of the use off of the car.

Appellant called as a witness Hattie Nickens, another member of the same family that was used by the State. She was a young lady eighteen years of age. She testified that during the night on which the assault occurred, she heard two persons come to the home of the appellant and call for him. From her testimony we understand that they came in an automobile and left on foot. This testimony tended to support appellant's theory that his car had been used by some one else and that he was not at home on the night in question. On cross-examination of this witness, State's counsel produced a writing which she testified had been signed by her a few days subsequent to the date of the offense. The writing was exhibited to her and her signature was identified by her. From this writing the State's counsel read or purported to read certain questions and answers which tended to refute the truth of her testimony upon the trial. Counsel for appellant requested that the writing used be delivered to him for the purpose of further questioning the witness with reference to the matter contained in her testimony. This was refused. In his qualification, the court said that the district attorney showed the writing to the witness and that appellant's counsel requested to see the entire statement, but that the district attorney stated that it contained testimony other than that inquired about.

The legal question presented appears to be identical with that which was before this court in the case of Green v. State, 53 Texas Crim. Rep. 492. In writing the opinion Judge Ramsey of this court quoted liberally from the case of State v. Bacon, 98 Am. Dec. 616,

in which quotation are found many references to decisions and text-books. Upon reasons fully stated by Judge Ramsey in the Green case, this court reached the conclusions that under the facts then before it, there was error in refusing the request of the accused that he be permitted to examine the paper which was used by the State's counsel for the purpose of refreshing the memory of the witness. The reasoning, principles and facts upon which the conclusion stated is based we conceive to be in no material sense different from those which control the instant case. Green's case, supra, is reported in L. R. A., Vol. 22, (N. S.) page 706. In the notes it is stated:

"The propriety of allowing adverse party to inspect, for the purpose of cross-examination, any memorandum used by a witness to refresh his memory upon the matters as to which he is testifying, appears to be universally conceded by the courts."

Taking note of the exceptions and modifications of the rule, we believe that there is nothing in the instant case which takes it out of the general rule. In the case of Jones v. State, 85 Texas Crim. Rep. 547, we held that as qualified, the bill revealed no error. The court's qualification revealed, however, that the accused and his counsel had full opportunity to examine the document in question. In Kirkland's case, 86 Texas Crim. Rep. 595, 218 S. W. Rep. 367, the the procedure was practically identical with that in the instant case. We believe that under the rule stated in Green's case, supra, the learned trial judge in the instant case was in error in refusing to require that the appellant be furnished the memorandum which was used by the counsel for the State and the witness and upon which, in part, her testimony on cross-examination was based.

An indictment charging robbery by assault and by the use of a deadly weapon is not duplicitous. Crouch v. State, 87 Texas Crim. Rep. 115. On another trial of the instant case, it is deemed unnecessary that the court should instruct the jury that the punishment for robbery with firearms was death or might be death.

Because of the error pointed out, the judgment is reversed and the cause remanded.

*Reversed* and *remanded.*