## ELLIE ST. CLAIR V. THE STATE.

### No. 9273.   Delivered March 10, 1926.

### Rehearing denied June 6, 1926.

**1.—Murder—Evidence—Demand for Written Confession—Properly Refused.**

Where, on a trial for murder, appellant on cross-examination of a member of the grand jury elicited from him that appellant had made a written statement before the grand jury, whereupon counsel for appellant requested the court to compel the state's attorney to deliver said confession to him, the court properly refused to do so, such statement nor any part of same, not having been offered in evidence by the state.

**2.—Same—Continued.**

And so the court properly refused to compel the state's attorney to deliver to counsel to appellant a statement in writing made by appellant to the sheriff and county attorney, such statement not having been offered in evidence by the state.   See Good v. State, 57 Texas Crim. Rep. 220, and other cases cited.

**3.—Same—Continued.**

Where a witness had testified without objection to statements of the accused, with reference to her shoes, which had been concealed by her, and their discovery, and comparison of said shoes with tracks at the scene of the homicide, and on cross-examination said witness stated that her statement had been reduced to writing, there was no error in the court's refusal to compel the state's attorney, to deliver the written statement to counsel for the appellant, nor in refusing to withdraw the testimony of such witness from the consideration of the jury.

**4.—Same—Continued.**

Asking the witness if appellant had made an oral statement to him as to where she had hidden the shoes worn by her at the time of the homicide, called for no part of the written statement, and if the State had asked outright for part of the written statement, made by appellant while under arrest, and no objection had been interposed by the defense to the answer, we would hold such action clearly a waiver on the part of the accused.

**5.—Same—Evidence—As to Wound on Deceased—Properly Admitted.**

Where the justice of the peace, who viewed and examined the body of the deceased, was permitted to testify that the shots ranged upward, such testimony was properly admitted, the testimony being pertinent.

**6.—Same—Misconduct of the Jury—Conflict in Evidence—Discretion of Court.**

When appellant complains of the misconduct of the jury in that they received other evidence coming from one of the jurors in their retirement, and the state controverts the facts presented, and evidence was heard on the issue and such issue having been decided adversely to appellant's contentions, the determination of the matter by the trial court will be sustained.

**7.—Same—Evidence—Held Sufficient.**

A careful examination of the statement of facts in this record, impresses us that the evidence of the state was ample to warrant the conviction of murder. Appellant admitted the killing of deceased, and claimed that the shooting was in her own self defense. All of the circumstances surrounding the killing, as well as her own acts and conduct, were in conflict with her defense. Having passed upon the issues raised we do not find any reason for disturbing the verdict of the jury and the cause is affirmed.

ON REHEARING.

**8.—Same—Right of Appellant to Written Statement—Not Sustained.**

Where a state witness had testified to statements made to him by appellant with reference to a pair of shoes, and on cross-examination testified that such statement had been reduced to writing, under Art. 728 C. C. P., 1925, there was no error in the trial court refusing to compel the State to deliver such writing to counsel for appellant, in order that such statement might be used in evidence.

**9.—Same—Continued.**

Under Art. 728 supra, it would have to be shown from the record, that the written statement referred to was necessary to an understanding of, or to explain the oral statement sworn to by the witness. No such showing is made. Appellant made no statement on the witness stand, nor does it appear in her bills of exception, which would lead us to conclude that anything in the written confession would have clarified or explained the testimony given orally by the state witness.

Appeal from the District Court of Milam County. Tried below before the Hon. John Watson, Judge.

Appeal from a conviction of murder, penalty five years in the penitentiary.

The opinion states the case.

*Chambers & Gillis* and *E. A. Wallace* of Cameron, for appellant.

*A. J. Lewis,* County Attorney of Milam County, *Sam D. Stinson,* State's Attorney, and *Nat Gentry Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Milam County of murder, and her punishment fixed at five years in the penitentiary.

Appellant's chief contention seems based on the refusal of the learned trial judge to compel the state's attorney to deliver to her attorney certain written statements more fully hereinafter referred to. This matter is presented in several bills of

exception, the substance of which will be stated and the matter generally disposed of. Lamkin, a member of the grand jury which found the bill herein, gave testimony for the state, none of his direct testimony being set out in the bill. On cross-examination he said they had before them while considering appellant's case, a written statement signed by her. Thereupon appellant sought to have the court compel the state's attorney to produce and deliver to her counsel said statement for their inspection and use as evidence. This is bill No. 2. Bill No. 3, sets out that after the state had concluded its evidence in chief, appellant renewed her request to compel the production and delivery of "the written statement made and signed by appellant * * * for purpose of evidence," which request was refused. Bill No. 4 sets out that while appellant was testifying in her own behalf her counsel brought out the fact that the next morning after her arrest she made a statement to the sheriff and county attorney which they wrote down and she signed—after bringing out which testimony appellant again insisted that the state be ordered to produce said written statement, which request was again refused. Bill No. 5 sets out that state witness Kennedy on direct examination, without objection, stated that on the morning after appellant's arrest she told him that certain shoes worn by her and offered in evidence could be found in a stovepipe in Henry Taylor's house; that he found them there, and said shoes were produced and testified to as having marks upon them corresponding to certain tracks found in the vicinity of the body of deceased. The bill further reveals that on cross-examination appellant's counsel asked witness if the statement about the shoes was reduced to writing and received an affirmative reply. Appellant then demanded that the written statement be produced by the county attorney and requested the court to order this done but the court refused. Appellant then moved the court to strike from the record the testimony of Mr. Kennedy as to what appellant had told him about the shoes, which motion was also refused.

Since bill No. 5 presents most forcibly appellant's objection and if disposed of adversely to her contention would settle the matters raised in the other bills, it will be discussed.

The writing called for by appellant was a private paper. Good v. State, 57 Texas Crim. Rep. 220; Taylor v. State, 87 Texas Crim. Rep. 338; Davis v. State, 270 S. W. 1022. Such paper becomes subject to appellant's demand for its pro-

duction only when used before the jury by the state in some way by which its contents become an issue, as illustrated in the cases of Green v. State, 53 Texas Crim. Rep. 490; Jones v. State, 85 Texas Crim. Rep. 547; Rutledge v. State, 250 S. W. 698; Cottrell v. State, 91 Texas Crim. Rep. 131; Kirkland v. State, 86 Texas Crim. Rep. 597; Taylor v. State, 87 Texas Crim. Rep. 338.

The bill of exceptions in question wholly fails to show that the state had asked any question relative to the written statement, or that it had exhibited same or referred to same in any harmful way or otherwise before the jury. Asking Mr. Kennedy if appellant had made an oral statement to him as to where she had hidden the shoes worn by her at the time of the homicide, called for no part of the written statement. This appears obvious. If the state had asked outright for part of the written statement made by appellant while under arrest and no objection had been interposed by the defense to the answer, we would hold such action clearly a waiver on the part of the accused.

Appellant made no objection to the testimony of Mr. Kennedy but asked him on cross-examination if the statements of appellant were reduced to writing and was informed that they were and that she signed it. We observe that these facts were as well known to appellant as to Mr. Kennedy, and were testified to by her when she took the stand, as was also the fact that she told Mr. Kennedy where to find the shoes. None of the bills state either in terms or effect that if appellant's attorney could inspect the written statement referred to, same would reveal anything different from or contradictory of the testimony of Mr. Kennedy, and as above stated, when appellant took the stand she swore that what Kennedy said as to her telling him where to find the shoes was in fact the truth.

The bills are also qualified by the trial judge to show that no limitation was imposed on appellant's counsel either when she was on the witness stand or in her cross-examination of Mr. Kennedy, in the matter of eliciting everything known to either bearing on the question as to what she said about finding of the shoes. None of the bills show error.

Bill No. 7 complains that the justice of the peace was allowed to state in substance that the shots in the body of deceased ranged upward. This was permissible. Other matters are set out in the bill as presented to the trial court, but in his qualification of same he states that he excluded all the answer save

that part relating to the range of the shots. The court states that he sustained the objection and excluded the part of the answer not responsive, as to where the parties may have stood when firing the shots.

Misconduct of the jury was urged, and one juror made affidavit that the nearness of the path where deceased was killed, to the public road, became an issue in the jury room, and that juror Pressley said he knew the locality and situation and that said pathway was not over two hundred yards from the public road, and drew a map of the premises and roadway to demonstrate the location of the pathway at the point where the homicide occurred. This affidavit was appended to appellant's motion for new trial. Juror Pressley made a counter affidavit which was attached to the state's traverse of appellant's motion. In his affidavit Pressley denied stating that he knew the pathway was not over two hundred yards from the road, and further said that based solely on his recollection of the evidence thereon submitted, and overruled the motion. Such by appellant, he drew a rough sketch of the premsies and the way the road ran, pathway, etc. The judgment of the trial court on the motion recites that he heard the motion and the evidence thereon submitted, and overruled the motion. Such recitation justifies us in upholding his action in refusing a new trial. Subdivision 8 of Art. 837, Vernon's C. C. P., provides that as showing misconduct, the voluntary affidavit of a juror is competent, and that the verdict may be sustained in like man-ner. The trial court had here an affidavit affirming and one denying the alleged misconduct. In such case we uphold the judgment of the trial court in the matter.

Appellant, a negro woman, contends that the evidence does not support her conviction for murder. We regret that we are not in accord with this proposition. We will not set out the evidence at length, but it shows that appellant told a story different from that told by the other witnesses. The killing took place early in the morning and at a point about two hundred yards from the house of Henry Taylor, whose cook appellant was at the time, and at whose house she stayed part of her nights—Taylor being a negro man separated from his wife. On the trial she admitted that as soon as she got to Taylor's house she told him of it, and that shortly thereafter she went out and got the shotgun with which she did the killing, from behind a log where she had secreted it, cleaned it and put it in a rack. Neither she nor Taylor made any mention to any-

one of the fact of the killing until later when suspicion had pointed at them and both had been arrested. The parties who inspected the body of deceased said it was lying near the path; that the hat of deceased was near his head and his coat was lying near his feet. Beyond the body from Taylor's house was a blackjack tree and a haw bush and between these trees and deceased's body was found the wadding from a shotgun shell. Appellant explained on the trial her part in the killing and said that she was going along the path and deceased emerged from behind a bush and threw a stick at her and said he was going to kill her; that she was carrying a shotgun; that deceased caught hold of her clothes and tore her dress in front or as she expressed it, "Tore her clothes off of her." That they scuffled around for quite awhile, she holding on to the gun all the time, and also holding on to a dress which she had wrapped up in a bundle. She said finally she ran between deceased's legs, still holding the gun and got away and backed off and shot him. She said she then ran as fast as she could to Taylor's house, hiding the gun behind the log as she went. A man who met her near Taylor's house testified that she was not excited, had no bundle, and that her clothes were not torn. Other witnesses who carefully examined the scene where the dead body was found testified there was no indication of a scuffle or struggle. One witness testified that he heard Taylor tell the woman a short time before this that if deceased ever fooled with her to kill him. We are not prepared to hold that the verdict is so unsupported by evidence as to show it to have been the result of prejudice or lack of consideration.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant relies on old Art. 811, C. C. P. (Art. 728, 1925 C. C. P.) as authority for contending that she was entitled to have the state turn over to her for use in evidence, an alleged confession in writing made by her, which was in possession of the state's attorney. The point she makes is that the state had drawn out of its witness Kennedy, on direct examination, the fact that appellant had made to him a statement relative to where she had hidden the shoes worn by her at the time of the homicide, which statement had been verified by the finding of the shoes at the place referred to— and that on cross-examination appellant had elicited from said witness the fact that said statement had 'been reduced

to writing and signed by her, and that when this was ascertained she made demand for said writing, upon the state's attorney in order that same might be used in evidence for the purpose expressed in the latter part of said statute above referred to.

Before we would hold the action of the trial court erroneous, we would have to be shown from the record that the written statement referred to was necessary to an understanding of or to explain the oral statement sworn to by Mr. Kennedy. No such showing is made. As stated in our original opinion, appellant as a witness in her case corroborated Kennedy in his testimony to the effect that she made the statement. She swore that she did tell him where her shoes were hidden. She made no statement on the witness stand, nor does any appear in her bill of exceptions, which would lead us to conclude that anything in the written confession would have clarified or explained the testimony given by Mr. Kennedy. We are not in accord with appellant in this matter.

We find nothing in the record which in words or by its surroundings indicates that appellant shot deceased in passion of any kind caused by his throwing a stick at her and striking her on the head. She made no such claim, nor is same supported by other testimony. We think the charge of the court entirely sufficient which informed the jury that if the mind of appellant was aroused to such degree of anger, rage, etc., by an attack which had been made or was about to be made on her with a stick, knife, etc., and that in this condition she did the killing, her guilt, if any, would be no more than manslaughter.

We are not reviewing at length the testimony which contains other circumstances showing guilt beside those mentioned in our former opinion. We see no reason for changing our views as to the sufficience of the testimony from those heretofore expressed.

Being unable to agree with appellant's contention, the motion for rehearing will be overruled.                    *Overruled.*