**AFFIRMED as MODIFIED and Opinion Filed March 29, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00288-CR**

**ALBERTO WASHINGTON ALCIVAR-ROSALES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-81774-2019**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Carlyle

A jury convicted Alberto Washington Alcivar-Rosales of continuous sexual abuse of a child and indecency with a child by contact, then assessed punishment on those counts at twenty-five years' imprisonment and two years' imprisonment, respectively. He contends (1) the trial court erred by allowing the jury to hear statements he made to a law enforcement officer during a custodial interrogation and (2) the judgment should be modified to reflect the correct penal code section regarding his indecency with a child conviction. We affirm the trial court's judgment as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

Police arrested Mr. Alcivar-Rosales at his apartment at approximately 4:30 a.m. on February 1, 2019. They took him to the Children's Advocacy Center of Collin County, where Captain Chris Fontana of the Collin County Sheriff's Office conducted a recorded interview during which Mr. Alcivar-Rosales confessed to the above-described offenses. Before trial, Mr. Alcivar-Rosales moved to "suppress all evidence of the confession and all fruits of that confession, including any consent to search any device or any location."

During a pretrial hearing outside the jury's presence, Captain Fontana testified Mr. Alcivar-Rosales did not appear to be impaired in any way during the interview. Captain Fontana stated he advised Mr. Alcivar-Rosales of his *Miranda*[1] rights and described his rights to remain silent, have a lawyer present during questioning, and terminate the interview at any time. Mr. Alcivar-Rosales stated he understood each of those rights and indicated he wanted to speak with Captain Fontana about the offenses. Captain Fontana testified he was able to understand what Mr. Alcivar-Rosales said and it appeared to him Mr. Alcivar-Rosales understood what was said to him. According to Captain Fontana, Mr. Alcivar-Rosales gave his statement freely and voluntarily. The interview lasted over an hour and was recorded in its entirety.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

During the pretrial hearing, the State offered the audio-visual recording into evidence and it was admitted without objection for purposes of the hearing.

On cross-examination by defense counsel, Captain Fontana stated Mr. Alcivar-Rosales (1) told him he "had a history of major depression and had been suicidal in the past" and (2) "made a statement during that interview that, I don't really care what happens to my life."

On redirect examination, Captain Fontana testified,

Q. . . . And so despite the fact that Defendant indicated he had depression, you know, seemed kind of down, was there anything that he said or did that made you believe he was impaired?

A. There was nothing that was—that made me believe he was impaired. And there was also the time of the morning we made the arrest . . . . He was on his way to school, way to work.
. . . .
Q. But, again, even though he seemed, like you said, he presented the way he did, there was nothing to indicate that he was impaired, didn't have his faculties about him to understand his rights or give an interview?

A. No, he was fine.

On recross-examination, Captain Fontana stated:

Q. . . . When Mr. Alcivar told you that he was depressed and had been suicidal before, did that raise concern in your mind in the moment that he might be suicidal as he sat before you?

A. There was a concern that he may have had that thought prior. I really didn't know exactly—I didn't know his demeanor yet, as I wanted to talk to him more and kind of see. He brought it up, I think once or twice, and then it kind of went away.
    But, you know, in any interview I do, there's compassion as far as that, and I want to make sure. And if I felt there was something, I would have stopped it and had somebody speak to him. But I didn't, so there was no need for that.

Mr. Alcivar-Rosales testified at the pretrial hearing that he has "major depressive disorder" that was first diagnosed in approximately 2013. The disorder's symptoms include "some cognitive dysfunction and memory problems." He stated he was currently not on any medication. He testified he has attempted suicide in the past, most recently in May 2019. He was hospitalized for a week after that attempt. On direct examination by defense counsel, he stated:

> Q. Mr. Alcivar, were you depressed when you spoke with [Captain Fontana] in the interview room after your arrest?
>
> A. Yes, sir.
>
> Q. Were you considering suicide in those moments?
>
> A. Not at that moment. For the past years—
>
> Q. When you—
>
> A. But at that moment, much sorry because I—I wasn't thinking. I just—since I been trying to end my life, I just thought that that was, like, the best way to end it.
>
> Q. Right. Is that what you meant by just put me in the hole?
>
> A. Yeah.
>
> Q. What about going to jail was attractive to you in that moment?
>
> A. But when I got to jail, they didn't treat me as if I was suicidal, so I just got—I was treated like everybody else, and I couldn't really process what was going on after—three days after. I just spent the time sleeping. I didn't really think what was going on.

On cross-examination by the State, Mr. Alcivar-Rosales testified that on the date of his arrest, he was working full-time as an elementary school teacher. He also testified:

–4–

Q. . . . You were listening to [Captain Fontana] and paying attention enough to understand what he was saying, right?

A. Kind of was saying, yes.

Q. And you indicated on there that you understood what he was talking about, and you guys actually carried on a conversation for over an hour, didn't you?

A. Yes.

Following that testimony, defense counsel argued "it is very clear, in Texas, that a mental disorder, such as this one, when it's manifesting in a custodial interrogation, means you don't have a knowing or voluntary confession." The State argued "nothing on the date of the interview indicated that the Defendant was in any way unable to give his statements freely and voluntarily." The trial court ruled that the recorded interview was admissible.[2]

During trial before the jury, the recorded interview was admitted into evidence without objection and the State published it to the jury. During closing, defense counsel argued the confession "wasn't voluntary" because "[t]hat man was in crisis, and it was obvious, and nobody cared." Defense counsel also directed the jury's

---

[2] Texas Code of Criminal Procedure article 38.22, § 6, provides that if a statement of an accused is found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, "the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause." TEX. CODE CRIM. PRO. art. 38.22, § 6. The parties do not mention or address that requirement. Though the record does not show the trial court entered a written order and findings after ruling the recorded interview was admissible, the only dispute here involved the interpretation of statements and actions that are conclusively shown by the recording. *See Fino v. State*, No. 05-17-00169-CR, 2018 WL 3829781, at *20 n.3 (Tex. App.—Dallas Aug. 13, 2018, pet. ref'd) (mem. op., not designated for publication). Thus, we conclude a more specific finding by the trial court is not necessary in this instance. *See id.*

attention to the jury charge's instruction "that if you don't find beyond a reasonable doubt that that statement was voluntary, then you shouldn't consider [it]."

**Analysis**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). We afford almost complete deference to the trial court's determination of historical facts and mixed questions of law and fact that rely upon witness credibility but conduct a de novo review of pure questions of law and mixed questions of law and fact that do not hinge on credibility or demeanor determinations. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010).

A statement of an accused may be used in evidence against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion" under the rules prescribed in the code of criminal procedure. TEX. CODE CRIM. PRO. art. 38.21. The code's article 38.22 sets out rules governing admissibility of an accused's oral statement and provides that only "voluntary" statements may be admitted. *Id*. art. 38.22; *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008). The potential "involuntary" fact scenarios encompassed by articles 38.21 and 38.22 are broader in scope than those covered by federal due process or *Miranda* and need not involve police misconduct. *Oursbourn*, 259 S.W.3d at 173. A

–6–

confession given "under the duress of hallucinations, illness, medications, or even a private threat" could be involuntary under articles 38.21 and 38.22. *Id.* at 172 (holding that where defendant claimed he was bipolar and thus unable to effectively waive his rights, issue of voluntariness should have been submitted to jury).

The determination of whether a statement is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). This includes the accused's experience, background, and conduct. *See, e.g.*, *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010). An accused's mentality is but one factor among many to consider when evaluating the voluntariness of a confession. *Delao*, 235 S.W.3d at 240; *see Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973) (stating that though evidence demonstrating individual's diminished mentality would have some bearing on confession's admissibility, it was not conclusive of involuntariness). When a defendant presents evidence raising a voluntariness question, the prosecution must prove voluntariness by a preponderance of the evidence. *See Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011).

In his first issue, Mr. Alcivar-Rosales contends the trial court erred by allowing the jury to hear his recorded confession because the State failed to show by a preponderance of the evidence that his statements "were voluntarily given."[3]

---

[3] The State contends this complaint was not preserved for appellate review because Mr. Alcivar-Rosales did not object when the recorded interview was admitted into evidence at trial and thus "[t]he record does

–7–

According to Mr. Alcivar-Rosales, (1) "the trial court heard from [him] regarding his mental health, his previous suicide attempts, major depressive disorder, and admission into a hospital for psychiatric care," and (2) he "testified that at the moment of giving his statements, [he] wasn't thinking and was trying to find 'the best way to end it.'"

Though Mr. Alcivar-Rosales testified at the pretrial hearing that he was "depressed" at the time of the interview, when asked whether he was "considering suicide in those moments" he responded, "Not at that moment. For the past years— ." The record shows he stated he understood his rights and communicated clearly with Captain Fontana throughout the interview. He had been planning to go to work that morning and the record does not show he was under the influence of any substances. Based on the totality of the circumstances, we conclude the trial court did not err by determining the State proved voluntariness by a preponderance of the evidence. *See Delao*, 235 S.W.3d at 240; *see also Perez v. State*, No. 02-19-00163-CR, 2020 WL 6788196, at *4 (Tex. App.—Fort Worth Nov. 19, 2020, pet. ref'd) (mem. op., not designated for publication) (though defendant stated he was depressed and possibly suicidal during recorded confession to sexual abuse of child,

---

not reflect that he intended to maintain the legal objection to his confession." The State does not address or explain how the defense's closing argument was consistent with "abandonment" of this complaint. *See Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015) (explaining courts should look at "the record as a whole" in determining whether statement of "no objection" constitutes abandonment of claim of error preserved earlier). For purposes of this opinion, we assume without deciding that this complaint was preserved.

trial court did not err by concluding this alone did not establish involuntariness where recording showed he "appeared cognizant and oriented" and continued with interview after being advised of rights).

In his second issue, Mr. Alcivar-Rosales asserts the trial court's judgment should reflect that he was convicted of indecency with a child under section 21.11(a)(1) of the Texas Penal Code instead of section 21.11(d) of that code. The State agrees.

This Court has the power to modify judgments to make the record speak the truth when it has the necessary data and information to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); TEX. R. APP. P. 43.2(b). Penal code section 21.11(d) addresses the punishment range for the offenses in section 21.11 but does not describe a particular offense. *See* TEX. PENAL CODE § 21.11(d). The record shows the indictment's indecency with a child count was based on the offense described in section 21.11(a)(1) and Mr. Alcivar-Rosales was convicted of that offense. Thus, we modify the trial court's judgment to show that the indecency with a child conviction was based on penal code section 21.11(a)(1) instead of section 21.11(d).

We affirm the trial court's judgment as modified.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
220288F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ALBERTO WASHINGTON
ALCIVAR-ROSALES, Appellant

No. 05-22-00288-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-81774-
2019.
Opinion delivered by Justice Carlyle.
Justices Goldstein and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to show that the indecency with a child conviction was based on
Texas Penal Code section 21.11(a)(1) instead of section 21.11(d).
As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered March 29, 2023

–11–